IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AALIYAH RASHAD,<br><br>Plaintiff,<br><br>v.<br><br>KINTETSU WORLD EXPRESS (U.S.A.), INC. and IMPACT OUTSOURCING SOLUTIONS, INC.,<br><br>Defendants. | CIVIL ACTION NO. |

## COMPLAINT

Plaintiff Aaliyah Rashad ("Ms. Rashad"), by and through her undersigned counsel, brings this action against Defendants Kintetsu World Express (U.S.A.), Inc. ("Kintetsu") and Impact Outsourcing Solutions, Inc. ("Impact"), and states and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA") seeking relief for Defendants' retaliation against Ms. Rashad for engaging in protected activity.

1

## JURISDICTION AND VENUE

2. This Court exercises jurisdiction over Ms. Rashad's claims pursuant to 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1(B) because a substantial part of the events or omissions giving rise to Ms. Rashad's claims, as described in this complaint, occurred within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4. Ms. Rashad is a citizen of the State of Georgia who resides in DeKalb County, Georgia.

5. Kintetsu is a Japanese corporation with its principal domestic office address at One Jericho Plaza, Suite 100, Jericho, New York, 11753.

6. Kintetsu may be served with process by delivering a copy of the complaint and summons to its registered agent, CT Corporation System, 1201 Peachtree Street NE, Atlanta, Georgia, 30361.

7. Kintetsu is an enterprise "that has employees engaged in interstate commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved

in or produced for commerce by any person engaged in interstate commerce and/or the production of goods for commerce." 29 U.S.C. § 203(s)(1)(A)(i).

8. Kintetsu employed Ms. Rashad, who engaged in interstate commerce and/or the production of goods for interstate commerce.

9. For example, in 2013, Kintetsu had, and continues to have, employees who regularly used computers and telephones to coordinate shipment services from domestic to international locations.

10. At all relevant times, Kintetsu had, and continues to have, at least $500,000.00 in "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A)(ii).

11. Impact is a domestic Georgia corporation with its principal office address at 300 Wilson Road, Building 800, Griffin, Georgia 30224.

12. Impact may be served with process by delivering a copy of the complaint and summons to its registered agent, Gordon Berger, 271 17th Street, NW, Suite 1900, Atlanta, Georgia 30363.

13. Impact is an enterprise "that has employees engaged in interstate commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved

in or produced for commerce by any person engaged in interstate commerce and/or the production of goods for commerce." 29 U.S.C. § 203(s)(1)(A)(i).

14. Impact employed Ms. Rashad, who engaged in interstate commerce and/or the production of goods for interstate commerce.

15. In 2013, Impact had, and continues to have, employees who regularly used computers and telephones while performing their duties.

16. In 2013, Impact placed its employees at the worksites of its clients who engaged in interstate commerce.

17. At all relevant times, Impact had, and continues to have, at least $500,000.00 in "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A)(ii).

18. Ms. Rashad was an employee within the meaning of 29 U.S.C. § 203(e).

**FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIM THAT DEFENDANTS ARE JOINT EMPLOYERS**

19. Impact is a staffing agency that places employees at its clients' worksites.

20. Impact has the power to hire employees to send to its clients' worksites.

21. Impact has the power to remove employees from its clients' worksites if the client requests.

22. Impact has the power to sever its relationship with its employees who are placed at its clients' worksites.

23. In 2012 and 2013, Kintetsu was one of Impact's clients.

24. Kintetsu hired Ms. Rashad directly on December 5, 2011 as Ocean Export Agent at Kintetsu's worksite, located at 565 Atlanta South Parkway, College Park, Georgia, 30349.

25. Kintetsu insisted that Ms. Rashad join a staffing agency as a condition of her continued employment at Kintetsu.

26. While Ms. Rashad sought employment with a staffing agency from December 2011 to April 2012, her employment at Kintetsu's worksite remained uninterrupted.

27. Ms. Rashad enrolled with Impact in April 2012.

28. After joining Impact in April 2012, Impact and Kintetsu continued to schedule Ms. Rashad for work at Kintetsu's worksite.

29. Defendants set the terms and conditions of Ms. Rashad's employment.

30. By way of example, Defendants determined Ms. Rashad's compensation.

31. Specifically, Defendants hired Ms. Rashad at a rate of $12.00 per hour.

32. After one year of employment, Ms. Rashad received a pay raise to $14.00 per hour.

33. Defendants later gave Ms. Rashad a second pay raise, which increased Ms. Rashad's hourly rate to $17.00 per hour.

34. Kintetsu instructed Impact to increase Ms. Rashad's hourly rate when it approved her pay raises.

35. Defendants also determined Ms. Rashad's work schedule.

36. Defendants determined Ms. Rashad's duties and responsibilities at the Kintetsu worksite.

37. Defendants offered Ms. Rashad benefits, including medical, vision, and dental coverage through Impact's benefits plan.

38. Defendants are, therefore, joint employers under the FLSA.

## COUNT ONE:  RETALIATION

39. Kintetsu provides international shipping and logistics services to its industry clients.

40. Ms. Rashad worked in Kintetsu's Ocean Export Department.

41. Ms. Rashad coordinated Kintetsu's shipments from domestic to international locations.

42. Ms. Rashad completed paperwork to ensure that Kintetsu's shipments cleared international customs.

43. Ms. Rashad invoiced Kintetsu's clients for services.

44. At times relevant to this action, Defendants required Ms. Rashad to clock in using a fingerprint-scanning time clock.

45. Defendants used the data from the time clock to calculate its workers' weekly time records.

46. Each week, Kintetsu provided its workers with a printout of their time records for the previous week.

47. Because Impact issued Ms. Rashad's paycheck each week, Kintetsu sent Impact a copy of Ms. Rashad's time records.

48. Impact used the time records it received from Kintetsu to calculate Ms. Rashad's payroll.

49. During times relevant to this action, Ms. Rashad routinely worked hours in excess of 40 per week ("overtime hours").

50. Ms. Rashad's overtime hours included hours spent voluntarily working through her lunch period.

51. Ms. Rashad's overtime hours included hours worked at the office after her scheduled shift.

52. On October 28, 2013, Ms. Rashad's supervisor at Kintetsu, Caleshia Graham, emailed employees in the Ocean Export Department, stating "if you do not clock out for lunch 1 hour will be automatically deducted if it is not preapproved prior by me."

53. A copy of the October 28, 2013, email sent from Caleshia Graham to employees in the Ocean Export Department is attached as Exhibit A.

54. On November 4, November 5, and November 6, 2013, Ms. Rashad worked through her one-hour lunch breaks.

55. On November 4, November 5, and November 6, 2013, Ms. Rashad did not clock out for lunch.

56. On Monday, November 11, 2013, Kintetsu provided Ms. Rashad with a printout of her time records for the week of November 4, 2013.

57. Kintetsu's printout of Ms. Rashad's time records did not include the three hours that she recorded while working through her lunch breaks on November 4, November 5, and November 6, 2013.

58. Because Ms. Rashad worked through her lunch breaks, her total weekly hours exceeded 40.

59. Defendants knew of Ms. Rashad's overtime hours during the workweek beginning Monday, November 4, 2013.

60. Despite knowing that Ms. Rashad had worked overtime hours during her lunch breaks without obtaining prior approval, Defendants did not discipline Ms. Rashad on November 11, 2013.

61. Rather than including the hours for payroll, Defendants attempted to avoid paying Ms. Rashad by removing the hours from her time records.

62. On November 11, 2013, Ms. Rashad emailed her supervisors at Impact, Amanda Broom and Todd Feltman, stating "I worked these hours and should have been paid for them. I would like to file an official grievance for this matter."

63. A copy of the November 11, 2013, email sent from Ms. Rashad to Amanda Broom and Todd Feltman is attached as Exhibit B.

64. Ms. Rashad's act of making the November 11 complaint constituted protected activity within the meaning of the FLSA.

65. In the days immediately following Ms. Rashad's written demand for unpaid overtime wages, Defendants took a series of adverse actions that ultimately resulted in Ms. Rashad's termination.

66. On November 12, 2013, Defendants issued Ms. Rashad an "Employee Counseling Form," which reprimanded her for "working unauthorized overtime."

67. Ms. Rashad's supervisor at Kintetsu, Caleshia Graham, signed the "Employee Counseling Form."

68. Ms. Rahsad's supervisor at Impact, Amanda Broom, also signed the "Employee Counseling Form."

69. A copy of the November 12, 2013, "Employee Counseling Form" issued to Ms. Rashad is attached as Exhibit C.

70. The Employee Counseling Form was the first time Ms. Rashad had received written disciplinary counseling from Defendants.

71. Defendants eventually paid Ms. Rashad for the hours she worked through her lunches on November 4, November 5, and November 6, 2013.

72. However, Defendants continued to retaliate by making adverse changes to the conditions of Ms. Rashad's employment.

73. For example, Defendants increased their direct observation of Ms. Rashad.

74. On Tuesday, November 12, 2013, Ms. Rashad's supervisor at Kintetsu emailed her, instructing her to switch cubicles with her co-employee by the end of the week.

75. After switching cubicles, Ms. Rashad's new cubicle was closer to her supervisor's desk.

76. On Wednesday, November 20, 2013, Defendants suspended Ms. Rashad without pay.

77. On the same day, Defendants told Ms. Rashad that she was being suspended because they had received a complaint from a coworker.

78. Defendants claimed that the coworker had reported feeling threatened during a conversation with Ms. Rashad.

79. Defendants also assured Ms. Rashad that they would conduct an investigation into the complaint.

80. On Friday, November 22, 2013, Kintetsu requested that Impact remove Ms. Rashad from its worksite.

81. Impact issued Ms. Rashad a separation notice, which stated that she was discharged for "violating company policy."

82. A copy of the November 22, 2013 separation notice issued to Ms. Rashad is attached as Exhibit D.

83. Despite her exemplary history as Defendants' employee, Defendants disciplined Ms. Rashad within 24 hours of her complaint that she was not being paid for all hours worked.

84. The week after Ms. Rashad complained that she was not being paid for overtime hours worked, Defendants suspended Ms. Rashad.

85. The week after Ms. Rashad complained of unpaid wages, Defendants terminated Ms. Rashad.

86. Defendants' termination of Ms. Rashad on November 22, 2013 was the direct consequence of Ms. Rashad's participation in protected activity under the FLSA.

87. Ms. Rashad's termination was causally related to her participation in protected activity.

88. Therefore, Defendants violated the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

89. Defendants' violation of the FLSA's anti-retaliation provision was willful.

90. Defendants' flagrant violation of the FLSA's anti-retaliation provision was committed with reckless disregard for Ms. Rashad's rights.

91. As a direct result of Defendants' overt and unlawful retaliation against Ms. Rashad, Ms. Rashad suffered substantial harm, including but not limited to lost wages.

92. Ms. Rashad is entitled to any "such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)." 29 U.S.C. § 216(b).

93. Pursuant to 29 U.S.C. § 216, Defendants are jointly and severally liable to Ms. Rashad for all damages resulting from Defendants' retaliation against Ms. Rashad in response to Ms. Rashad's protected actions.

## DEMAND FOR JUDGMENT

Ms. Rashad respectfully requests that:

I. The Court enter a declaratory judgment in favor of Ms. Rashad;

II. The Court enter a judgment in favor of Ms. Rashad;

III. The Court enter judgment against Defendants that their violations of the FLSA were willful;

IV. The Court award Ms. Rashad all unpaid wages as provided for by the FLSA;

V. The Court award Ms. Rashad liquidated damages equal to the amount of all unpaid wages as provided for by the FLSA;

VI. The Court award Ms. Rashad any "such legal or equitable relief as may be appropriate to effectuate the purpose of Section 215(a)(3), including without limitation employment reinstatement, promotion and payment of wages lost and an additional amount as liquidated damages," pursuant to 29 U.S.C. § 216(b);

VII. The Court award Ms. Rashad compensatory damages for Defendants' flagrant violation of the anti-retaliation provision of the FLSA;

VIII. The Court award Ms. Rashad backpay, front pay, and liquidated damages for Defendants' flagrant violation of the anti-retaliation provision of the FLSA;

IX. The Court award Ms. Rashad reasonable costs and attorney's fees as provided for by the FLSA;

X. The Court determine all triable issues at trial; and

XI. Ms. Rashad receive such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Rashad demands a trial by jury.

Respectfully submitted: March 17, 2014.

                                                                s/Morgan Thomas

MAYS & KERR LLC  
235 Peachtree Street  
North Tower | Suite 202  
Atlanta, Georgia 30303  
Telephone: (404) 410-7998  
Facsimile: (404) 855-4066  
morgan@maysandkerr.com  
john@maysandkerr.com  

Morgan L. Thomas, Esq.  
Georgia Bar No. 542088  
John L. Mays, Esq.  
Georgia Bar No. 986574  

Counsel for Plaintiff